[No. 36332. Department Two. January 2, 1963.]

THE STATE OF WASHINGTON, *on the Relation of Carl R. Lange et al., Relators*, v. THE SUPERIOR COURT FOR KING COUNTY, *George R. Stuntz, Judge, Respondent.**

*Reported in 377 P. (2d) 425.

154

 

*Wayne C. Booth* (of *Wright, Booth, Beresford & Anderson*), for relators.

*The Attorney General* and *John C. O'Rourke, Assistant,* for respondent.

HAMILTON, J.—By writ of certiorari, relators seek review of an order adjudicating public use and necessity in a condemnation proceeding.

Relators own three parcels of land in Seattle, which the state seeks to appropriate as a part of a 535-foot right of way for a portion of Primary State Highway No. 1, a limited access facility, otherwise identified as the Seattle Freeway.

The following sketch, prepared by the court from the exhibits, illustrates the relationship of relators' property (parcels 7-801, 7-802, and 7-803) to the proposed right of way.

Relators concede the public use and necessity for acquisition of parcel 7-802. Relators contest, however, the necessity of the proposed appropriation of parcels 7-801 and 7-803.

At the conclusion of a rather extended hearing, the trial court entered an order adjudicating public use and necessity as to relators' three parcels.

Relators, in their brief, state the issue to be "whether public use and necessity requires the taking of the easterly 100 feet of real property belonging to relators."

Ten assignments of error are propounded, which, by their interrelationship, and relators' argument, fall into three basic categories: (1) Purported errors of the trial court in admitting certain evidence, permitting the state to reopen its case, and proposing a mistrial; (2) insufficiency of the state's proof upon the issue of necessity; and (3) legal and constitutional objections.

We have carefully examined the record in the light of relators' assignments of error to the trial court's admission of evidence, reopening of the state's case, and proposed mistrial. We find no prejudicial error or abuse of discretion.

We turn to the second category into which relators' assignments of error fall.

In considering the errors assigned hereunder, it must be borne in mind that a condemnation action consists of three phases: (1) Adjudication of public use and necessity, (2) determination of damages to be awarded to the owner, and (3) payment of the amount of the award and entry into possession. *Public Util. Dist. No. 1 v. Washington Water Power Co.*, 43 Wn. (2d) 639, 262 P. (2d) 976; *Mercer Island School Dist. No. 400 v. Victor Scalzo, Inc.*, 54 Wn. (2d) 539, 342 P. (2d) 225.

We are here concerned exclusively with the first phase, which, in turn, is subdivided into three interrelated essential findings: (1) That the proposed use is really a public use; (2) that the public interests require it; and (3) that the property appropriated is necessary for the proposed public purpose. *State ex rel. Bremerton Bridge Co. v. Superior Court*, 194 Wash. 7, 76 P. (2d) 990; *State ex rel. Sternoff v. Superior Court*, 52 Wn. (2d) 282, 325 P. (2d) 300. Relators' assignments of error are directed to the third prerequisite.

We have defined the word "necessary," as used in condemnation statutes, to mean reasonable necessity, under the circumstances of the particular case. *Samish River Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 Pac. 670; *State ex rel. Patterson v. Superior Court*, 102 Wash. 331, 173 Pac. 186; *Port of Everett v. Everett Imp. Co.*, 124 Wash. 486, 214 Pac. 1064.

We have stated that detailed and precise plans of the highway to be constructed are not determinative of the condemnor's rights, and that the jurisdictional fact needed to support an order of public use is simply that a public highway is projected for the land sought. *State ex rel. Agee v. Superior Court*, 58 Wn. (2d) 838, 365 P. (2d) 16.

The legislature, speaking of the selection and determination of public use and necessity of lands for right of way purposes, has said, in part, in RCW 47.12.010:

"Whenever it is necessary to secure any lands for a right of way for any state highway, or for the drainage thereof or construction of a protection therefor or so as to afford unobstructed vision therefor toward . . . any point of danger to public travel . . . the highway commission is authorized to acquire such lands in behalf of the state by gift, purchase or condemnation. In case of condemnation to secure such lands, the action shall be brought in the name of the state of Washington . . . and in such action the selection of the lands by the highway commission shall, in the absence of bad faith, arbitrary, capricious or fraudulent action, be conclusive upon the court and judge before which the action is brought that said lands are necessary for public use for the purposes sought. . . ."

■ Although the issue of public use and necessity is, under our constitution, a judicial one, we have long adhered to the theory that administrative selection is conclusive, in the absence of bad faith, arbitrary, capricious or fraudulent action. *State ex rel. Sternoff v. Superior Court, supra.*

Relators' assignments of error basically spring from, and revolve around, a discrepancy between two sets of maps introduced into evidence, and to the proposed use of a three to one instead of a two to one slope upon the highway fill. The maps, relied upon by relators, place proposed future traffic lanes 40 feet further west than the maps relied upon by the state. This, together with use of a two to one fill slope, used elsewhere along the proposed freeway, would, under relators' theory, render the taking of the easterly 100 feet of their property unnecessary. Thus, relators contend, the proposed appropriation of their property becomes excessive, arbitrary, capricious and constructively fraudulent, and is without competent evidentiary support.

The state's evidence reveals such factors as a proposed off ramp, commencement of an interchange to the north, proper drainage, construction needs, maintenance, and safety necessarily enter into the engineering and admin-

istrative determination of fill slope and right-of-way width at the point in question.

The trial court, after giving careful consideration to the evidence presented, and to relators' contentions, determined that the proposed acquisition was not excessive, arbitrary, capricious, constructively fraudulent, or unnecessary.

Under the law, and upon the record before us, we find no error in such determination.

Turning then to the third category into which the assignments of error fall, relators first hereunder contend that approval of the proposed highway plans by the United States government constitutes a condition precedent to a judicial determination of public use and necessity. It is their position that the state has not demonstrated federal approval of the precise location of the traffic lanes in question, or of the proposed three to one fill slope.

Relators premise this contention upon RCW 47.10.702, which provides:

"This highway project shall be constructed as a part of the federal interstate highway system as a fully controlled limited access facility and shall meet the standards and specifications required by the state of Washington and the secretary of commerce of the United States in order to qualify for federal grants in aid as provided for in the federal-aid highway act of 1956. The state shall perform all conditions precedent to payment in advance of apportionment as provided by section 108(h) of the federal-aid highway act of 1956 so as to be entitled to federal aid funds for the project covered by RCW 47.10.700 through 47.10.724 when such funds are apportioned."

As we have hereinbefore indicated, specific plans for a proposed highway facility are not determinative of the condemnor's rights at this stage of a condemnation proceeding, because the basic jurisdictional fact supportive of a requested order of public use and necessity is that a public highway is projected over the land sought, and not the manner or means of its completion.

By the same token, we do not deem federal approval of construction plans determinative of a condemnor's right in this phase of a condemnation proceeding.

In *State ex rel. Sternoff v. Superior Court, supra,* when considering contentions somewhat akin to relators' contentions here, we said [p. 289]:

"Certain objections made by relators challenge the ability of the state to complete the contemplated highway. These matters relate to certain conditions which must be met before the state may qualify for apportioned Federal matching funds which will, in large measure, be used to finance construction. Relators fear that the highway presently proposed will not be constructed. But these matters are not germane to the issues before the court in determining the right of the condemnor to an order adjudicating public use and necessity."

The authorities cited by relators are not in point. We find no merit in this contention.

Relators lastly contend that the condemnation statutes, particularly RCW 47.12.010 and 47.52.050, are violative of the due process clauses of the state and federal constitutions, in so far as they purport to authorize the taking of property or property interests in excess of the public need, and render administrative determination of necessity conclusive.

■ Relators have not demonstrated an excessive or unnecessary taking contrary to public need, and our reading of the statutes involved does not lead us to the conclusion that such statutes authorize arbitrary or capricious administrative taking of property or property interests in excess of the public need. As hereinbefore pointed out, the extent of the property which may be taken is limited to such as is reasonably necessary for the particular public purpose. We do not read the case of *Seattle v. Faussett,* 123 Wash. 613, 212 Pac. 1085, relied upon by relators, as imposing upon a condemnor a constitutional requirement of a showing of absolute necessity.

We find no merit in relators' contention under the facts here presented.

The order adjudicating public use and necessity is affirmed.

FINLEY, C. J., DONWORTH, OTT, and HUNTER, JJ., concur.